UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CHRISTINA A. WATSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Cause No. 1:14-cv-1445-WTL-TAB |
|  | ) |  |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Christina A. Watson requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Watson filed her application for DIB on December 7, 2011, alleging disability beginning November 23, 2011, due to bipolar disorder. Watson's application was initially denied on May 14, 2012, and again upon reconsideration on July 24, 2012. Thereafter, Watson requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on March 14, 2013, via video conference before ALJ Hortensia Haaversen. Watson and her counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Nicholas Fidanza testified as a vocational expert. On April 4, 2013, the ALJ issued a decision denying Watson's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on July 1, 2014. This action for judicial review ensued.

## II.     EVIDENCE OF RECORD

Watson's mental impairments are longstanding. In November 2011, however, her mental impairments worsened and she sought inpatient treatment due to severe depression and suicidal thoughts. After she was released, she began attending outpatient therapy and was prescribed medications to control her mood and anxiety.

In March 2012, just three months after her inpatient treatment, state-agency psychologist, Kenneth Lovko, Ph.D., reviewed Watson's record and completed a Psychiatric Review Technique. At that time, he found that Watson met the requirements of Listing 12.04, Affective Disorders. Later that month, Bruce Lipetz, Psy.D., reviewed Dr. Lovko's report and opined that Dr. Lovko's findings were based on a limited record. He also concluded that it "appear[ed] unlikely that [Watson's] condition [would] remain severe and markedly limit[ ] all work for an entire year." Tr. at 521. As such, he maintained that more evidence from Watson's treating sources was required.

As a result, in May 2012, after the record was further developed, Dr. Lovko reviewed the additional records and found that Watson did not meeting Listing 12.04. This time, he noted and opined as follows:

> Additional information gathered from Gallahue includes last treatment notes on 4/16/12 which note [claimant's] mood remains [sic] depressed. [Claimant] reporting increased panic attacks, has been snapping at husband, hasn't been getting out and driving anywhere, has been avoiding others. No alcohol or drug use reported.
>
> However, neurologist notes 2/12 that [claimant's] bipolar is active but stable.
>
> . . .
>
> While [claimant] did have decline in functioning in 11/11 . . . [claimant] has prior history of being able to sustain employment and with ongoing treatment [she] should be capable of returning to this level of functioning . . .

> While [claimant's] symptoms may present some impediment to work situations with large numbers of people, it does seem that the [claimant] could deal with environments that have fewer persons in them, and where stress levels are limited.
>
> The evidence suggests that claimant can understand, remember, and carry-out unskilled tasks without special considerations in many work environments. The claimant can related on at least a superficial . . . ongoing basis with co-workers and supervisors. The claimant can attend to task[s] for sufficient periods of time to complete [the] tasks. The claimant can manage the stresses involved with unskilled work.

*Id.* at 538.

### III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.

3

step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Watson had not engaged in substantial gainful activity since November 23, 2011, her alleged onset date. At step two, the ALJ concluded that Watson suffered from the following severe impairments: Bipolar disorder and, after November 16, 2012, right knee osteoarthritis. At step three, the ALJ determined that Watson's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Watson had the following residual functional capacity ("RFC"):

> [P]rior to November 16, 2012[,] the claimant had no exertional limitations. Secondary to mental limitations, she could understand, remember and carry out unskilled tasks without special considerations in many environments; she could relate at least on a superficial basis and on an ongoing basis with co-workers and

4

supervisors; there may be some impediment to work situations with large numbers of people, but she would be capable in environments with fewer persons where stress levels are limited; therefore only occasional interaction with co-workers and supervisors and no interaction with the general public; and the low-stress jobs as defined as only occasional decision-making; she would be capable of tending to tasks for sufficient time to complete the tasks and would be able to manage the stresses involved with unskilled work (based on the opinion of State agency (DDS) psychological consultant Ken Lovko, Ph.D. dated May 2, 2012 . . . ). After November 16, 2012, in addition to the above mental limitations, the claimant has the additional physical limitations in that she can lift and carry 20 pounds occasionally and 10 pounds frequently; and she can stand, walk or sit for six hours in an eight-hour workday (due to her knee impairment assessed by Dr. Haihong Mao . . . ).

Tr. at 14. Given this RFC, and taking into account Watson's age, education, and work experience, the ALJ determined at step five that, prior to November 16, 2012, Watson could perform jobs existing in significant numbers in the national economy, those being a general laborer, a hand packager, or a mail sorter. After November 16, 2012, Watson could work as a mail sorter, a housekeeper, or an electronics worker. Accordingly, the ALJ concluded that Watson was not disabled as defined by the Act from November 23, 2011, through the date of her decision.

## V.  DISCUSSION

Watson advances several objections to the ALJ's decision; each is addressed below.

### A.  Listing 12.04

First, Watson argues that she "met her burden of proof by offering to the ALJ substantial psychiatric treatment and examination evidence proving that her depression and anxiety with auditory and visual hallucinations and paranoia rendered her totally disabled." Watson's Br., Dkt. No. 14 at 7. For the most part, she relies on the first report issued by Dr. Lovko, in which he found that Watson met Listing 12.04. Watson argues that the ALJ "arbitrarily rejected" this evaluation. *Id.* The Court is not persuaded by Watson's argument.

5

Indeed, the ALJ carefully considered both of Dr. Lovko's reports. Ultimately, she gave "less weight" to the March 2, 2012, opinion and "great weight" to the May 2, 2012, opinion. Tr. at 18. The ALJ explained her reasoning as follows:

> Dr. Lovko's opinion was based on the claimant's three-month treating record as of the date of her . . . inpatient admission and records from Gallahue . . . and the consultative examination[.] . . . However, the treatment record indicates the claimant attended irregularly and was drinking alcohol[.] . . . Further, after Dr. Lovko's opinion, the record indicates the claimant's condition improved. There was no further alcohol use reported and her treating clinicians noted she was cooperative with improved concentration and memory[.] . . . Her GAF score upon intake at Aspire was 53, indicative of only moderate symptoms. Also, the claimant had not been in treatment for months and [she] admitted [that] her lawyer suggested she continue therapy. Moreover, she was not even sure what she needed help with.
>
> . . .
>
> . . . Dr. Lovko's updated opinion is supported by the overall evidence of record. As indicated above, the claimant's condition improved after consistent treatment and medicinal management. Even after she stopped taking her medications for a few months . . . , she initiated treatment with Aspire and there is no record of emergency room visits or inpatient hospitalizations during that time. Moreover, the claimant has a prior history of being able to sustain employment even with a brief hospitalization in 2006[.]

*Id.*

The Defendant argues that "Watson does not even acknowledge [Dr. Lovko's] revision, much less explain why Dr. Lovko erred in doing so." Def.'s Resp., Dkt. No. 15 at 5. While this was initially true, in her reply brief, Watson responded to this argument. She maintains that Dr. Lovko did not "cite any specific additional evidence that was inconsistent with his previous determination," and his "'revised' opinion was simply speculation about the future; it did not provide any changed analysis of her present or previous psychological impairments." Watson's Reply, Dkt. No. 16 at 3-4. Thus, according to Watson, it was improper for the ALJ to credit Dr. Lovko's second report over his first report. The Court does not agree.

6

As outlined above, the ALJ cited several specific supported reasons for according greater weight to Dr. Lovko's second opinion. Dr. Lovko had the benefit of reviewing additional treatment records when he issued his second report, and the medical evidence does indeed indicate that Watson's mental impairments were improved with therapy and medication. In short, the Court is unable to find that the ALJ's reliance on Dr. Lovko's revised opinion, as opposed to his initial opinion, requires remand.

Watson also argues that the ALJ "erroneously rejected" Watson's low Global Assessment of Functioning ("GAF") scores of 41, 45, and 47. Again, the Court does not agree.

With regard to the GAF scores, the Court first notes that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on [her] GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations and quotations omitted). Moreover, the Social Security Administration has concluded that GAF scores do "not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50746-01. Simply put, the GAF scores alone do not satisfy Listing 12.04, or the paragraph B criteria.

Additionally, the ALJ did not "erroneously reject" the GAF scores. Watson's GAF scores were noted in the decision and considered by the ALJ. The ALJ, however, specifically noted that GAF scores provide "no longitudinal application," and "[t]he Commissioner of the Social Security Administration has declined to endorse the GAF scores for use in the Social Security disability programs, and has indicated that such scores have no direct correlation to the severity requirements of the mental disorders listings." Tr. at 19. Additionally, the ALJ noted that Watson "had not been on medication in years and her providers were altering dosages to find effective

7

amounts and to counter side-effects" when those GAF scores were assigned. *Id.* For these reasons, the ALJ concluded that the scores did "not realistically reflect the claimant's ongoing functioning throughout [her] treatment history." *Id.* As there are ample reasons for the ALJ's decision to give the GAF scores "less weight," the Court finds that the ALJ did not "arbitrarily reject" the scores.

Watson points to no other medical evidence showing that Listing 12.04 is met. Thus, the Court finds that the ALJ's consideration of Listing 12.04 was not improper under the circumstances, and remand is not warranted.

### B. Failure to Call Medical Advisor

Next, Watson argues that "[t]he ALJ's failure to summon a medical advisor to testify whether the claimant's combined impairments medically equaled any Listing impairment[,] such as 12.04 requires reversal." Watson's Br. at 9. The ALJ, however, did not abuse her discretion in failing to call a psychologist to testify at the hearing.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination," and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). However, the court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record and what measures are needed to accomplish that goal. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Thus, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ is not required to consult a medical expert if the medical evidence in the record is adequate to render a decision on the claimant's disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

In her reply, Watson provides some support for her argument. She maintains that the agency's review physicians "did not review the Aspire mental health treatment through 1-23-13. . . . Presumably if they had reviewed all of the evidence[,] they would have reasonably determined she was totally disabled." Watson's Reply at 6.

The Court is unsure why the treatment notes from Aspire are particularly significant and require additional review by a physician. Watson does not explain the documents and/or why they would lead a medical expert to find that she is disabled. Simply put, Watson fails to articulate in any meaningful way why a medical advisor was necessary, and the Court, without more, will not reverse this matter simply because the ALJ did not call a psychologist to consider "*all* of the evidence in the record." *See also D.N.M. ex rel. Brame v. Colvin*, No. 1:13-CV-00884-RLY, 2014 WL 4636390, at *7 (S.D. Ind. Sept. 16, 2014) ("His argument is: 'Presumably if they had reviewed all of the evidence they would have reasonably determined the claimant was totally disabled.' . . . That is certainly not the Court's presumption. While it might be [the plaintiff's] presumption, it was definitely his *burden* to show that the nature of these items of evidence, compared to the other evidence the state agency physicians reviewed, required the ALJ to obtain a supplemental medical opinion.") (emphasis in original).

### C. Step 5 Determination

Lastly, Watson argues that the ALJ did not give "full consideration to all of [Watson's] documented impairments in determining that she is not disabled." Watson's Br. at 11. Thus, according to Watson, the ALJ's determination at step five was not supported by substantial evidence. This argument, however, is premised on the idea that Watson's impairments are disabling and more severe than what was found by the ALJ. Again, she relies on the March 1, 2012, evaluation completed by Dr. Lovko to support her argument. As noted above, however,

Watson has failed to show that the ALJ's decision to give "less weight" to Dr. Lovko's first report was erroneous or improper. Accordingly, the ALJ's step five analysis does not warrant remand.

## VI. CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 5/15/15

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.